**In re Milton SCHRAIBER, Debtor.**

**OAK MILL ENTERPRISES 2000, INC., Plaintiff,**

**v.**

**Alexander S. KNOPFLER, Trustee, Defendant.**

**Bankruptcy No. 87 B 17144. Adv. No. 91 A 01094.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 8, 1992.

See also 132 B.R. 129.

Daniel Feldman, Richard T. Reibman, Schwartz Cooper Kolb & Gaynor, Chicago, Ill., for Knopfler.

John H. Redfield, Chicago, Ill., for Schraiber defendants.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Oak Mill Enterprises 2000, Inc. ("OME") is a party to a First Amended Purchase and Sale Agreement of Shopping Center, dated June 1, 1990 (the "Sale Agreement"), between OME and Alexander S. Knopfler ("Knopfler" or "Trustee"). Knopfler is the Trustee in the Chapter 11 case of Milton Schraiber. OME filed a two-count adversary complaint against the Trustee to recover $75,000 in earnest money paid pursuant to the Sale Agreement. OME claims that it properly terminated the Sale Agreement and therefore is entitled to recover the $75,000. OME asserts that the only issue is whether the environmental clause giving it the right to terminate had expired before OME exercised its rights thereunder. According to OME, there is no genuine issue of fact whether it timely exercised this right because the Trustee judicially admitted in a motion filed before this Court that OME's right to terminate the Sale Agreement had not expired.

Defendant responds by disregarding movant's point and raising one of his own—an assertion that plaintiff invoked its purported right to terminate in bad faith. The latter defense is one that defendant has as yet deemed unnecessary to plead, so plaintiff argues that it is waived.

In addition to moving papers and briefs, OME filed an affidavit of Harry Major, President and 50% shareholder of OME. The Trustee filed an affidavit of Malcolm Gaynor, one of Trustee's attorneys. Both

parties filed statements of uncontested fact as required by Local District Rule 12(m) and (n) which has been adopted as a rule of the Bankruptcy Court. For reasons stated below, the motion will be denied.

### Uncontested Facts

This litigation concerns a contract to sell a shopping center located at 7900 North Milwaukee Avenue, Niles, Illinois (the "Mall"), and an adjacent lot (the "Corner Lot") (collectively the "Property").

On May 1, 1990, the Trustee and OME executed a Purchase and Sale Agreement of Shopping Center. This agreement was amended on June 1, 1990 by the Sale Agreement. On June 4, 1990 this Court entered an Order (the "Order") authorizing the Trustee to sell the Property to OME free and clear of all liens, claims and encumbrances.

Pursuant to the Sale Agreement, OME tendered $100,000 to the Trustee as earnest money, which was to be held in an interest-bearing account pending closing. The closing was to occur on the later of (i) 30 days from the date on which OME notified the Trustee that OME was prepared to close the transaction, or (ii) no later than 240 days after the date of the Sale Agreement, unless extended by agreement of the parties or by operation of other provisions of the Sale Agreement.

OME's obligation to close the Sale Agreement was subject to its ability to enter into a new lease with Jewel Companies, Inc. ("Jewel"). Section 10 of the Sale Agreement provided that, unless extended by agreement of the parties, OME had 240 days after the date of the Sale Agreement to obtain a lease from Jewel. Absent an agreement to extend the closing, the closing had to occur by January 27, 1991 or the Sale Agreement would be terminated and OME would forfeit all earnest money.

Section 7 of the Sale Agreement also gave both parties an option to terminate the Sale Agreement if environmental remediation costs exceeded $400,000. Under Paragraph 3 of Section 7 of the Sale Agreement, OME would be entitled to a dollar-for-dollar credit against the purchase price if environmental remediation costs were less than $200,000. In the event environmental remediation costs were between $200,000 and $400,000, OME would bear the costs in excess of $200,000. If the environmental remediation costs exceeded $400,000, then either OME or the Trustee could terminate the Sale Agreement. In that event, all earnest money in excess of $25,000, including accrued interest, would be returned to OME.

Paragraph 1 of Section 7 recited that the Trustee had ordered a Phase I environmental report on the Property and delivered it to OME. The third sentence of this section also gave OME "the right to make such additional environmental tests on the Project as it deems necessary within 90 days after the execution hereof." The fourth sentence provided that OME "may cause its own environmental study to be performed with respect to the Project, at [OME's] own expense and at [OME's] sole risk." (Joint Pretrial Statement at ¶¶ 23 and 24.)

The Phase I report was prepared by Versar, Inc. ("Versar Report"). The Trustee delivered it to OME. It indicated the presence of asbestos in the mastic underneath the floor tile of the Jewel space. That report also indicated the possible presence of underground storage tanks on the Corner Lot.

Prior to this Court's approval of the Sale Agreement, OME had hired O'Brien & Associates, Inc. ("O'Brien") to investigate the Property and prepare a Phase I report ("O'Brien Report I"). The O'Brien Report I, dated May 11, 1990, also indicated soil contamination on the Corner Lot due to the possible presence of underground storage tanks. O'Brien estimated that there was a minimum of 900 cubic yards of contaminated soil. Further investigation was discontinued due to concern over possible damage to existing utilities.

OME hired O'Brien to perform a further site investigation of the Property and prepare a report on its findings ("O'Brien Report II"). This report (dated September 21, 1990) estimated a minimum of 3,000 cubic

yards of contaminated soil would have to be removed and also indicated that the Illinois Environmental Protection Agency would need to be notified. Neither the O'Brien Report I nor the O'Brien Report II estimated the cost to abate the asbestos or contaminated soil.

In November 1990, OME, through Mr. Major, began negotiating with the Trustee to extend the closing date. OME had not yet obtained a lease from Jewel and its officers then still felt it would succeed in doing so, but needed more time. The Trustee requested additional consideration to agree to any extension. On January 9, 1991, a meeting was held regarding the extension of the closing date between Mr. Major, his partner Jeff Green, the Trustee, and the Trustee's attorney, Bruce Dopke.

At this meeting the Trustee agreed to extend the closing date for 60 days. In consideration for the extension, OME agreed to waive its right under Section 7 of the Sale Agreement to terminate the Sale Agreement for environmental reasons. This agreement was confirmed by a letter dated January 10, 1991 from Mr. Dopke to Mr. Major. Mr. Dopke also filed a motion with the Court on this date seeking approval of the extension.

The motion set forth the parties' agreement to extend the closing date 60 days and also stated in paragraph 4(c): "The Buyer [OME] shall waive its right to terminate the Contract [Sale Agreement] in the event that the cost of remedy of environment defects at the Mall exceed the sum of $400,000.00, as provided by paragraph 7 of the Contract."

A hearing on the motion was held on January 17, 1991. At the hearing, a Mr. Taxman objected to the motion and expressed interest in submitting a competing bid on the Property. This Court continued the hearing until February 1, 1991, to allow Mr. Taxman to submit a bid. On January 24, 1991 at a meeting between OME and the Trustee's attorneys, OME was informed that the Trustee would discontinue its motion to extend the closing date on the Sale Agreement.

On or about January 17, 1991, OME hired ATEC Associates, Inc. ("ATEC") to provide estimates of the cost to remove asbestos and to excavate and remove contaminated soil. ATEC prepared a cost estimate based upon the Versar Report, the O'Brien Report I, a tour of the Property, and discussions with a licensed asbestos removal contractor and several tank removal firms. The cost estimates are given in a report dated January 24, 1991 (the "ATEC Report").

The ATEC Report estimated the cost to remove the asbestos at $431,250.[1] The cost of soil removal was estimated at $750,000, ($100 per cubic yard).[2] ATEC also provided an estimate for soil venting, although not asked to do so. Soil venting is a more economical method of dealing with contaminated soil. ATEC estimated that the total cost of employing the soil venting method would be $400,000.

Following receipt of the ATEC Report indicating that environmental remediation costs would exceed $400,000, OME decided to invoke the environmental termination clause of the Sale Agreement. In a January 25, 1991 letter from OME's attorneys, OME notified the Trustee that it was exercising its right to terminate under Section 7 of the Sale Agreement because the costs to remedy environmental problems would exceed $400,000, and requested the return of the earnest money, less $25,000. The Trustee, through its attorneys, refused to return the earnest money. A second de-

---

**1.** The asbestos contained in the mastic under the floor tiles was not in a "friable" condition. However Mr. Major stated in his deposition testimony that his lender required the removal of all asbestos, whether friable or not.

**2.** This estimate assumed that 7,500 cubic yards would have to be removed, and was based on the O'Brien Report II which recommended the excavation and removal of 5,000 cubic yards.

Roger Berkowitz of ATEC, indicated in his deposition that he was unclear how 7,500 cubic yards was arrived at. He stated that ATEC had been asked to estimate the cost of removal based upon the dimensions of the former gas station site to a specified depth, by Mr. Green or Mr. Major. Mr. Berkowitz also testified that it is not uncommon for the volume of soil removed to exceed initial estimates.

mand was made by OME's attorneys on February 1, 1991, but was again refused. On October 18, 1991 OME filed the present Adversary proceeding.

OME later obtained additional cost estimates to remove the asbestos and remediate the soil. The Brand Companies, Inc. estimated the cost of asbestos removal at $451,500 and its affiliate, Chemical Waste Management estimated the cost of removing contaminated soil at $345,300 for 7,500 cubic yards.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

### Standards for Summary Judgment

Federal Rule of Civil Procedure 56 (Fed.R.Bankr.P. 7056) provides that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility of showing the Court that there is no genuine issue of material fact by identifying the portions of the pleadings, depositions, affidavits, and other material relied on in its motion. *Id.* at 323, 106 S.Ct. at 2552–53. In determining whether the movant has met this burden, the evidence is viewed in a light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Once the moving party has shown *prima facie* that it is entitled to summary judgment, the party opposing the motion may not rest on the allegations or denials in the pleadings, but must, by affidavit or otherwise, show that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The existence of

an issue of material fact is sufficient to deny the motion only if the disputed fact determines the outcome of the case under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

In addition, Local District Rule 12(m), which was adopted as a Bankruptcy Court Rule, requires the moving party to file a detailed statement of material facts as to which there is no genuine issue. The party opposing the motion is required by Local District Rule 12(n) to file a response to the movant's statement, setting forth any facts which require denial of summary judgment and identifying affidavits and other supporting material relied upon in support of the response. Failure to file a response to the statement of facts is deemed an admission of all reasonable facts set forth in the movant's statement and waives the adverse party's opportunity to contest the facts in the statement. *Harbin v. Sun Life Assur. Co.*, 710 F.Supp. 1167, 1168 (N.D.Ill.1989).

Fed.R.Civ.P. 56(d) involves situations in which the motion does not lead to a judgment on the entire case but only terminates further contest on a portion of the litigation. Partial summary judgment is only available to entirely dispose of one or more counts in the complaint. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir.1959); *Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25, 28 (N.D.Ill.1985); *In re Network 90 Degree, Inc.*, 98 B.R. 821, 823 (Bankr.N.D.Ill.1989), *aff'd*, 126 B.R. 990 (N.D.Ill.1991). This motion is brought under Rule 56(d), as it seeks to dispose entirely of Count I of the Complaint.

### Discussion

Count I of the Adversary complaint alleges that the Trustee's failure to return the earnest money pursuant to Section 7 of the Sale Agreement is a breach of the Sale Agreement. The Trustee has answered by asserting that the environmental studies and purported exercise of the option to terminate occurred more than 90 days after the execution of the Sale Agreement, and

consequently OME's attempted termination was untimely. In the pending motion for summary judgment, OME contends that the only issue of material fact is whether OME timely exercised its right to terminate under Section 7 of the Sale Agreement, thereby entitling OME to a refund of $75,-000 of the earnest money. If the right to terminate under Section 7 had expired, under the agreement OME would forfeit all of the earnest money. OME argues that the Trustee admitted that this right to terminate had not expired through a judicial admission of his attorney.

In his Response to OME's motion for summary judgment, the Trustee claims that whether the right to terminate had expired is a secondary issue. The "real issue", according to the Trustee is whether OME exercised the environmental clause in good faith. The Court will address the defense asserted by the Trustee first.

### *The Bad Faith Defense*

■ The Trustee contends that OME invoked the environmental clause only when it realized that the Sale Agreement was going to expire on its own terms on January 27, 1991, unless extended. Had the Sale Agreement expired, OME would have forfeited all of the earnest money. In order to avoid the loss of all the earnest money, the Trustee claims that OME invoked the environmental termination provision. According to the Trustee, this constitutes bad faith and is a basis for denying the motion for summary judgment. OME responds that the Trustee waived the bad faith defense by failing to raise it in a timely manner.

■ Fed.R.Bankr.P. 7008(a) [Fed. R.Civ.P. 8(c)] requires any matter constituting "an avoidance or affirmative defense" to be set forth in the responsive pleading. This rule is consistent with Fed. R.Bankr.P. 7012(b) [Fed.R.Civ.P.12(b)] which requires that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required...." Failure to timely plead an affirmative defense generally waives that defense. *Pinto Trucking Service, Inc.*, 649 F.2d 530, 534 (7th Cir.1981).

■ The Trustee's claim that OME acted in bad faith is an affirmative defense. See *In re Steve D. Thompson Trucking, Inc.*, 1991 WL 277576, 1991 U.S.Dist.LEXIS 19621 (N.D.Ill. December 29, 1991) (an affirmative defense is one that annuls the cause of action, it does not merely controvert an element of plaintiff's *prima facie* case.) The Trustee did not raise the defense in the responsive pleading but waited until discovery was closed and OME brought a motion for summary judgment. However, amendments to pleadings are liberally permitted, sometimes even after trial is over. Fed.R.Bankr.P. 7015 (Fed.R.Civ.P. 15). It cannot be said at this early stage of the case that any possible defense was finally waived. However, the time for filing pretrial motions has passed under the preliminary pretrial order. The chances that this Court would allow a motion to plead this defense now diminish with each day that brings the trial closer.

■ Nonetheless, the Trustee's asserted defense is doubtful on the present record. As a matter of law, the mere exercise of a contractual right to terminate in order to avoid forfeiture of earnest money is not bad faith. The Seventh Circuit stated in *Kham & Nates Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1357 (1990):

> Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith'. Although courts often refer to the obligation of good faith that exists in every contractual relation, (citations omitted), this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document.

The duty to act in good faith means that parties must refrain from taking opportunistic advantage of their contractual partners in a way that violates the spirit or goal of the contract. See *Id.* at 1357,

("'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting"); *Market Street Associates Ltd. Partnership v. Frey,* 941 F.2d 588, 595 (7th Cir.1991) ("the office of the doctrine of good faith is to forbid the kinds of opportunistic behavior that a mutually dependent, cooperative relationship might enable in the absence of rule").

In this case, the Sale Agreement gave OME a right to terminate for excessive remediation costs. OME negotiated for that right and subsequently exercised it, and there is no defense pleaded that OME took unfair advantage of the Trustee. Accordingly, OME's exercise of a bargained-for right, if that is all it did, would not constitute bad faith.

### Timeliness of Termination

■ The Court now turns to OME's argument that the only issue of fact in this case—the timeliness of OME's termination—is resolved by a judicial admission of the Trustee's attorney.

The Trustee does not dispute validity of the Sale Agreement or that the Sale Agreement gave OME a right to terminate and recover $75,000 of the earnest money if environmental costs exceeded $400,000. Nor does the Trustee dispute that environmental reports indicated remediation costs would exceed $400,000 or that OME did in fact exercise the right to terminate. The only issue the Trustee disputes is whether OME timely exercised the right to terminate. This dispute stems from language in Section 7 of the Sale Agreement which limited the exercise of certain rights to ninety days after execution of the Sale Agreement.[3] OME argues that any dispute over the timeliness of the termination

is resolved by a judicial admission of the Trustee's attorney.

While attempting to a negotiate an extension of the closing date, the Trustee insisted that OME provide additional consideration. OME rejected any idea that it put up additional earnest money, and instead the parties agreed that OME would waive its right to terminate under Section 7. This agreement was confirmed in a letter of January 10, 1991 and was documented in a motion filed with this Court seeking authorization of the extension. OME argues that the statement in the Trustee's motion that OME agreed to "waive its right to terminate the contract ... as provided by paragraph 7 of the Contract" constitutes a judicial admission by the Trustee's attorneys that the right to terminate under Section 7 had not expired.

■ A judicial admission arises by way of factual assertions in pleadings, stipulations, statements in pretrial orders, and by responses to requests to admit. *American Title Insurance Company v. Lacelaw Corporation,* 861 F.2d 224, 226 (9th Cir. 1988); *In re Prairie Trunk Railway,* 1991 WL 149601, 1991 Bankr.Lexis 1091 (Bankr. N.D.Ill. July 23, 1991). Once it is determined that a statement is a judicial admission it is within the court's discretion whether to accept or reject it. *In re Applin,* 108 B.R. 253, 258 (Bankr.E.D.Cal.1989). If the court accepts the judicial admission, it is conclusively binding upon the party that made it. *American Title,* 861 F.2d at 226.

In this case the alleged judicial admission is contained in a pleaded motion. In *American Title,* the Ninth Circuit had to decide whether statements in trial briefs were judicial admissions. Following the rule in the Tenth Circuit, the court concluded that

---

**3.** Section 7 of the Sale Agreement states: "The Trustee has ordered a survey of the Land in accordance with ALTA standards certified to Purchaser, the Title Company and Purchaser's lender, if any and a Phase I Environmental Study of the Land and Improvements, which has been delivered to Purchaser. Trustee will assign any rights thereto to Purchaser at Closing. Purchaser shall have the right to make such additional tests on the Project as it deems

necessary within 90 days after the execution hereof. Purchaser may cause its own environmental study to be performed with respect to the Project, at Purchaser's own expense and at Purchaser's sole risk."

This provision was contained in paragraph 1 of Section 7. The provision authorizing termination of the Sale Agreement in the event environmental remediation costs exceeded $400,000 was contained in paragraph 3 of Section 7.

statements of fact in a brief *"may* be considered admissions of the party in the discretion of the district court." *Id.* at 227. This principle is equally applicable to statements in motions.

■ However, the motion containing the statement was not filed in the present Adversary proceeding, but in a related Bankruptcy proceeding. An admission made in one proceeding will not be regarded as conclusive and binding in a separate proceeding. *Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131, 1142 (5th Cir.1992); *Enquip, Inc. v. Smith–Mc-Donald Corp.,* 655 F.2d 115, 118 (7th Cir. 1981). Adversary proceedings are separate proceedings from the motions filed in the underlying bankruptcy case. As Judge Ginsberg explains in his treatise, "[a]n adversary proceeding is literally a trial within a case. It is a full-blown federal civil proceeding conducted within the context of bankruptcy case." Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 1.07[a] (2nd Ed. 1991). The Seventh Circuit has recently discussed the relationship of bankruptcy and adversary proceedings stating that a bankruptcy case "is often a conglomeration of separate adversary proceedings that, but for the status of the bankrupt party which enables them to be consolidated in one proceeding, would be separate, stand-alone lawsuits." *Matter of James Wilson Associates,* 965 F.2d 160 (7th Cir.1992). A bankruptcy case is a bundle of related controversies, and trustees must be free to handle each individual controversy separately in order to maximize the value of the estate. Treating all the contested matters and adversary proceedings as one controversy and causing the statements made in one matter to be binding in all other matters would be inconsistent with this concept. Therefore, while the statement in the motion may be admissible as an admission of a party-opponent, F.R.E. 801(d)(2)(C–D); *United States v. McClellan,* 868 F.2d 210, 215 n. 9 (7th Cir.1989), it is not a judicial admission with conclusive effect because it was not made in the same proceeding.

Moreover, on the record there are facts tending to show that OME's right to terminate *had* arguably expired. As the Trustee points out, there is more than one inference that can be drawn from the "admission" in the motion. Trustee's Response at p. 4. The parties might have disagreed as to whether the termination provision could still be exercised and agreed to settle the issue as additional consideration for the contract extension. Also, the termination provision in the Sale Agreement is ambiguous and susceptible to different interpretations. One possible interpretation of Paragraph 1, Section 7 is that OME was required to complete its environmental studies and cost estimates within 90 days of June 1, when the agreement was signed. OME's right to terminate expired if this was the intent of the parties because the studies were not completed until much later that year.

Facts in dispute may not be weighed and determined in a summary judgment proceeding. Since the timeliness of OME's termination of the Sale Agreement is not conclusively established by the judicial admission, and the record presents a triable issue on that question, this Court must deny OME's motion for summary judgment on Count I.

### CONCLUSION

By separate order entered this day, OME's motion for partial summary judgment on Count I of the Complaint is denied because there is a triable issue of fact as to timeliness of OME's termination of the Sale Agreement.

The as yet unpleaded bad faith defense is not reached and certainly cannot be decided at this stage of the proceedings.