**Veronica DEBERRY, as mother and next friend of Shauntia Marae Deberry, Plaintiff,**

**v.**

**SHERMAN HOSPITAL ASSOCIATION, an Illinois corporation, Defendant.**

**No. 90 C 1173.**

United States District Court, N.D. Illinois, E.D.

July 25, 1991.

mother, took her daughter to Sherman Hospital's emergency room, complaining that her daughter suffered from a fever, rash, stiff neck that tilted to the left, and such dispositional abnormalities as lethargy and irritability. These symptoms were recorded by one nurse. A second nurse gave the child medication and drew blood for a blood test. This nurse also recorded her own observation that the child held her head to the left, did not move when the blood was drawn, and cried with movement. Shauntia was then examined by Doctor Jackson who took a history from the mother and ordered a blood test. During the physical the doctor found Shauntia to be alert, active and in no apparent distress. He also found the child's neck to be supple but with some tenderness in the left lymph nodes. Shauntia's left ear was inflamed. The doctor saw Shauntia again once the blood test was completed, but found no change in the observed characteristics.

Dr. Jackson considered the possibility that spinal meningitis was present but ultimately rejected that diagnosis. Based on the results of the physical examination and blood test, Dr. Jackson determined that Shauntia was suffering from nothing worse than an acute ear infection. After prescribing some medicine to treat the believed affliction, Dr. Jackson sent the Deberrys home. Two days later Shauntia was admitted to the hospital, diagnosed as having spinal meningitis.

Based on these allegations, the plaintiff argues that the treatment Shauntia received at Sherman Hospital on January 10, 1988 fell short of the "appropriate medical screening examination" required by COBRA 42 U.S.C. § 1395dd, as amended by the federal Emergency Medical Treatment and Active Labor Act (hereinafter "§ 1395dd" or "the anti-dumping act").[1] In addition, the Deberry complaint asserts a pendant state medical malpractice claim.

The defendant filed a motion to dismiss asking this court to decide whether § 1395dd accorded relief to a plaintiff who

Stephen F. Gray, Cook County State's Attorney's Office, Chicago, Ill., John W. Fisk, Kenneth Craig Chessick, Law Office of Kenneth C. Chessick, Schaumburg, Ill., for plaintiff.

John G. Langhenry, Jr., Robert H. Smith, Hinshaw & Culbertson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on Defendant Sherman Hospital Association's motion for summary judgment. For the reasons stated below, the motion is granted.

## BACKGROUND

This case involves the alleged medical misdiagnosis of an eight month old child, Shauntia Deberry, by a Sherman Hospital Association doctor, Douglas Jackson. On January 10, 1988 the plaintiff, Shauntia's

---

**1.** Because the alleged patient dumping occurred in 1988, this case must be decided with reference to the 1988 version of the anti-dumping act.

was not indigent and had not been completely denied care by the defendant hospital. Noting that the statute unqualifiedly applies to "any individual" denied treatment without regard to the person's financial condition or the motive underlying the denial, we held that such factors were not prerequisites to statutory coverage. *Deberry v. Sherman Hospital Association,* 741 F.Supp. 1302, 1306 (N.D.Ill.1990). We further found that the statute clearly applied to more than just the outright refusal to treat: treatment leading to the discharge of a patient with an unstable condition is also covered. *Id.* Combining this analysis with the liberal principles of notice pleading, we concluded that the pleading requirements for a § 1395dd claim are satisfied by allegations that the plaintiff

> (1) went to the defendant's emergency room (2) with an emergency medical condition, and that the hospital either (3) did not adequately screen him to determine whether he had such a condition, or (4) discharged or transferred him before the emergency condition had been stabilized."

*Id.* at 1305. As the Deberry complaint contained these requisite elements, this court denied the defendant's motion to dismiss on June 15, 1990.

Presumably with this decision in mind, the parties have engaged in several months of discovery. The discovery depositions indicate that Ms. Deberry told the triage nurse that Shauntia had a stiffness in her neck, was not drinking her formula, and was sensitive to the touch. They further indicate that Dr. Jackson took a history, examined the child, considered a diagnosis of meningitis, ordered a blood test but not a spinal tap, determined Shauntia suffered from otitis media, prescribed an antibiotic and sent the Deberrys home. Although the testimony of the deponents does not agree on the symptoms exhibited on January 10, 1988, the record does indicate that the doctor himself did not observe signs of lethargy, unusual sensitivity, or stiffness in the neck.

Citing *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266 (6th Cir.1990) the defendant now moves for summary judgment on the grounds that § 1395dd does not provide a civil remedy for mere negligence or misdiagnosis. In support of this motion, the defendant argues that any disputed facts remaining in this case are immaterial since (1) the plaintiff received the same treatment that the hospital would have offered to any other paying patient and (2) any emergency medical condition that existed on January 10, 1988 was not known to the hospital staff.

The plaintiff attacks the motion procedurally as a back-door effort to obtain reconsideration of this court's June 15, 1990 ruling. In addition, Ms. Deberry asserts that negligent treatment is essentially a denial of appropriate care which can lead to an actionable violation of § 1395dd. Finally, the plaintiff states that material issues of fact persist on the questions of whether the hospital failed to perform an appropriate medical screening examination, whether Shauntia had an emergency medical condition on January 10, 1988, and whether she was discharged before that condition was stabilized.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted only if the pleading, answers to interrogatories, admissions, affidavits and other material submitted by the parties demonstrate that genuine issues of material fact are absent and that the case may be resolved as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing that no disputed material facts exist, while the nonmovant is entitled to the benefit of all favorable inferences reasonably drawn from the record. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987). If a jury hearing the evidence could reasonably find for either party, summary judgment may not be granted. *National Distillers & Chemical Corp. v. First National Bank of Highland Park,* 804 F.2d 978, 980 (7th Cir.1986).

Since a material fact is one which affects the outcome of the suit under the applicable law, *Anderson*, 106 S.Ct. at 2510, the materiality of the disputed facts may only be determined by reference to the legal standard against which violations of § 1395dd(a) and (b) are measured. Accordingly, it is to this issue that we first turn.[2]

In addressing this issue we do not, as the plaintiff contends, essentially grant reconsideration of the June 15, 1990 ruling. In its motion to dismiss, the defendant questioned whether a full denial of treatment and a patient's indigent status must be alleged in making out a claim pursuant to § 1395dd. We did not address, as we do in this motion, the standard by which the existence of an actionable violation is adjudged.

## LIABILITY STANDARD UNDER § 1395dd

The starting point of our analysis is, of course, the statutory language. Section 1395dd requires hospitals to provide any person requesting treatment for a medical condition with "an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). In addition, should the hospital determine that the individual suffers from an emergency medical condition, the hospital must provide whatever treatment (within its capabilities) is needed to stabilize the condition prior to transferring or discharging the patient. 42 U.S.C. § 1395dd(b)(1). If a hospital fails to satisfy either of these requirements, it may be subjected to two types of sanctions. First, under § 1395dd(d)(1) a hospital that "knowingly and willfully, or negligently" violates the statute may, at the initiative of the Secretary of Health and Human Services, be subject to termination or suspension of its medicare provider agreement. Second, under § 1395dd(d)(2) a hospital that "knowingly" violates the statute may be required to pay a civil penalty to the patient (or transferee hospital) harmed by the violation. Ms. Deberry's federal claims arise under this second, subsection (d)(2), cause of action.[3]

The rules of statutory construction require courts to interpret statutes in such a way as to give effect to every term used. *Zimmerman v. North American Signal Co.*, 704 F.2d 347, 353 (7th Cir.1983) (citations omitted) (court should not construe a statute in such a way as to make words or phrases meaningless, redundant or superfluous). Moreover, where Congress uses a particular phrase in one section but omits it in another, the difference in language is presumed to be intentional. *See Russello v. U.S.*, 464 U.S. 16, 21, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (citation omitted) (interpreting RICO); *National Insulation Trans. Committee v. I.C.C.*, 683 F.2d 533, 537 (D.C.Cir.1982) (interpreting the Railroad Revitalization and Regulatory Reform Act). Thus, the legislature's use of "knowingly and willfully or negligently" in subsection (d)(1) and simply "knowingly" in subsection (d)(2) gives rise to a reason-

---

**2.** The Local Rules of this district require the filing of a statement of material facts by a movant for summary judgment and a responding statement by the nonmovant. *See* Northern District of Illinois Local Rule 12. Such documents are more than a mere formality as they tell the court specifically what issues raised in the record are genuinely in dispute. The parties should note that the failure of a movant to file such a statement is grounds for denial of the motion, while failure of the nonmovant to respond to the movant's statement constitutes an admission of all reasonable facts stated by the defendant. As the plaintiff failed to object to the defendant's motion and to prepare her own statement of material facts, this court did not take the extreme measures allowed by the local rules.

**3.** As it stood in 1988, § 1395dd read:

(1) As requirement of Medicare Provider Agreement—If a hospital knowingly and willfully, or negligently, fails to meet the requirements of this section, such hospital is subject to—

(A) termination of its provider agreement ..., or

(B) ... suspension of such agreement for such period of time as the Secretary determines to be appropriate....

(2) Civil Monetary Penalties—A participating hospital that knowingly violates a requirement of this section is subject to a civil money penalty of not more than $50,000 for each such violation....

OBRA Corrections, Pub.L. No. 100–360, 102 Stat. 772 (1988) (codified as amended 42 U.S.C. § 1395dd(d)).

able presumption that Congress intended to establish different standards for the restriction of medicare participation on the one hand and the imposition of civil penalties on the other.

■ This interpretation is confirmed by the 1991 amendments to the act and accompanying legislative history. *See Brown v. Marquette Savings and Loan Ass'n*, 686 F.2d 608, 615 (7th Cir.1982) (citations omitted) (where subsequent legislation reflects an interpretation of an earlier act, the amendment is entitled to great weight in determining the meaning of the earlier statute). Pursuant to the 1991 amendments, a hospital that negligently violates § 1395dd(a) or (b) will be subject to a monetary penalty under § 1395dd(d). Although the final Conference Report for this amendment initially states that the legislation "clarifies" the civil penalty standard, the Report later recognizes that the substitution *"changes* the standard for a civil money penalty for participating hospitals." H.R.Conf.Rep. 964, 101st Cong., 2nd Sess. 1990, U.S.Code Cong. & Admin.News 1990, pp. 2017, 2421, 1990 WL 201626(LH) (emphasis added). This piece of legislative history intimates that the negligence standard established in the 1991 law differs from the previously existing standard. *See Bryant v. Riddle Memorial Hospital*, 689 F.Supp. 490, 492 (E.D.Pa.1988) (statements in a congressional committee report recommending adoption of legislation are highly authoritative in determining the purpose of the legislation). Therefore, we conclude that the 1988 version of § 1395dd(d) did not provide for civil penalties for the negligent violation of § 1395dd(a) or (b) by a hospital or its staff.

■ In reaching this conclusion, we are in accord with the Sixth Circuit's *Cleland* opinion. However, we part company with *Cleland* to the extent that it requires the plaintiff to prove that an improper motive underlies a hospital's denial of care. *See Cleland*, 917 F.2d at 272. The anti-dumping act nowhere mentions the hospital's motives as a prerequisite to coverage. There is, therefore, no statutory basis for imposing on a would-be COBRA plaintiff

the burden of proving that the hospital violated the statute for reasons specific to that plaintiff. *See Deberry*, 741 F.Supp. at 1306.

At least one appellate court has reached the same conclusion. *Gatewood v. Washington Health Care Corporation*, 933 F.2d 1037, 1041 n. 3 (D.C.Cir.1991). *Gatewood*, like this case, involved the alleged misdiagnosis of a medical condition. The District of Columbia Circuit Court of Appeals held that § 1395dd did not create a sweeping federal cause of action for malpractice claims traditionally protected by state law, but rather created a new cause of action "for what amounts to failure to treat." *Id.* at 1041. The *Gatewood* court then concluded that

"a hospital fulfills the 'appropriate medical screening' requirement when it conforms in its treatment of a particular patient to its standard screening procedures. By the same token, any departure from standard screening procedures constitutes inappropriate screening in violation of the [§ 1395dd]. The motive for such departure is not important to this analysis."

*Id.*

## APPLICATION

■ In opposing this motion the plaintiff has failed to produce any evidence upon which a jury could find the hospital liable under § 1395dd. There is no indication that the hospital knowingly failed to conduct an appropriate medical examination under § 1395dd(a). To the contrary, the record indicates that within ten minutes of their arrival in the emergency waiting room the Deberrys were seen by a nurse who recorded Shauntia's symptoms. Finding that the child was feverish, a second nurse followed hospital procedures in administering medication to bring down the temperature. Next the Deberrys were seen by Dr. Jackson who took a history, conducted a physical examination, and ordered a blood test. The fact that Dr. Jackson's ultimate diagnosis might have been incorrect or even inconsistent with the diagnosis that a reasonable physician under

similar circumstances would have made is irrelevant under the civil penalty provision of the anti-dumping act.

Similarly, there is no evidence in the record to suggest that Dr. Jackson knew that Shauntia suffered from an emergency medical condition. The parties' submissions indicate instead that after examining the child, Dr. Jackson determined that no emergency medical condition existed. Under such circumstances, Dr. Jackson's alleged failure to stabilize the condition cannot be characterized as "knowing." Thus, even if a jury could find that Shauntia suffered from an emergency medical condition on January 10, 1988 and that the emergency medical condition was unstable at the time of discharge, the hospital could not be held liable under § 1395dd(b).

## CONCLUSION

Since the plaintiff is unable to produce sufficient evidence on the basis of which a jury could find the defendant liable under § 1395dd, Ms. Deberry's federal claim is dismissed with prejudice. Because it was on that claim that jurisdiction over this case was based, we also dismiss the plaintiff's pendant malpractice claims but with leave to reinstate in state court. Finally, in light of these rulings we will not address the defendant's motion to preclude the additional opinions of Eva F. Lichtenberg, Ph.D.