**In re Frederick DE PASQUALE, Debtor.**

**BANCFLORIDA, Plaintiff,**

**v.**

**Frederick DE PASQUALE, Defendant.**

**Bankruptcy No. 91 B 15011.**
**No. 93 C 4488.**
**Adv. No. 92 A 00855.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 28, 1994.

---

David J. Kramer, Yorkville, IL, for debtor/defendant Frederick De Pasquale.

Philip V. Martino, Stephen B. Jackson, Rudnick & Wolfe, Chicago, IL for plaintiff BancFlorida.

## *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on BancFlorida's motion for summary judgment on Count III of its complaint against Frederick De Pasquale (the "Debtor") pursuant to Federal Rule of Civil Procedure 56, incorporated by reference in Federal Rule of Bankruptcy Procedure 7056. For the reasons set forth herein, the Court having considered the pleadings, exhibits and affidavits filed, hereby grants the motion for summary judgment on Count III of the complaint.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. *FACTS AND BACKGROUND*

Many of the facts in this matter are not in dispute and are set forth in the Court's prior Memorandum Opinion. *See BancFlorida v. De Pasquale,* 1993 WL 78219 (Bankr.N.D.Ill. March 1, 1993). In November, 1990, the Debtor purchased a thirty-three foot 1990 Fountain Lighting twin engine boat from the Fort Meyers Beach Marina for the price of $114,370.05. *See* BancFlorida's General Rule 12(M) Statement, Exhibit B. The Debtor entered into an installment contract and security agreement assigned to BancFlorida to finance the purchase of the boat and engines, borrowed $112,759.16 from BancFlorida, and granted BancFlorida a security interest in the boat and engines. *See* BancFlorida's General Rule 12(M) Statement, Exhibits C, D and E. In connection with the purchase, the Debtor submitted a personal financial statement to Fort Meyers Beach Marina on September 28, 1990. *See* BancFlorida's General Rule 12(M) Statement, Exhibit F. Although the Debtor prepared and signed the financial statement in September, 1990, the financial statement listed the Debtor's assets and liabilities as of June 1, 1990. *Id.* This financial statement was then submitted to BancFlorida by Fort Meyers Beach Marina.

Pursuant to the financial statement, the Debtor represented he had a total net worth of $2,249,640. *Id.* The assets listed by the Debtor on the financial statement included: (1) IRA accounts valued at $25,000; (2) a living trust valued at $150,000; (3) life insurance valued at $100,000; (4) a home with a market value of $425,000; (5) a Florida lot with a market value of $115,000; (6) furniture and appliances valued at $65,000; (7) a 1989 Cadillac valued at $21,500; (8) a 1989 Corvette valued at $29,350; (9) clothing valued at $5,000; (10) jewelry and tableware valued at $48,000; (11) computer equipment valued at $2,750; (12) guns valued at $3,500; (13) miscellaneous valued at $4,000; (14) 30 acres farmland valued at $988,268; and (15) 76 acres land zoned commercial valued at $869,022. The financial statement also listed the Debtor's total current annual income at $148,700. This total included $118,800 from "wages"; $24,500 from "income"; and $5,400 from "rental income." *Id.*

The Debtor filed a Chapter 13 case on July 17, 1991. *See* BancFlorida's General Rule 12(M) Statement, Exhibit G. Thereafter, on February 12, 1992, the case was converted to Chapter 7. The Debtor's petition and schedules list the Debtor as having assets of $370,650 and total liabilities of $436,737. *Id.* Many of the assets listed on the 1990 financial statement were not scheduled by the Debtor.

On December 10, 1991, the Debtor appeared for a deposition by BancFlorida. BancFlorida had previously requested that the Debtor produce all books, records and documents relating to the Debtor's financial affairs. *See* BancFlorida's General Rule 12(M) Statement, Exhibit H. At the deposition, the Debtor stated that he had no documentation of cash assets, real estate, durable assets held, transferred or owned by himself or his wife; he had no documentation of his or his wife's liabilities incurred or disposed of within the past two years independent of the Chapter 13 petition and schedules; the Debtor had no records reflecting the current disposition of his or his wife's assets or liabilities; and the Debtor had no documents per-

taining to his personal income from wages, salaries, or investments or his wife's personal income from wage, salaries or investments. *See* BancFlorida's General Rule 12(M) Statement, Exhibit A, pp. 10–12. In response to the notice of deposition, the Debtor admitted that no documents were withheld on the basis of any privilege or on the basis of relevance. *Id.* at pp. 13–14.

Despite repeated requests by BancFlorida of the Debtor, the Debtor has failed to produce to BancFlorida any documents or records responsive to its requests. *See* BancFlorida's General Rule 12(M) Statement, Exhibit I, Affidavit of Stephen B. Jackson, Jr. The Debtor stated that in his 1990 move to Florida, several boxes were misplaced and he has been unable to locate them. *See* BancFlorida's General Rule 12(M) Statement, Exhibit A, p. 7. The Debtor admitted at his deposition that as of June 1, 1990, the information contained on the financial statement was correct, but the statement was not complete. *Id.* at p. 51.

Regarding the Debtor's current financial position, he no longer has the IRA accounts listed at $25,000 on the financial statement because he withdrew that money in 1991. *Id.* at pp. 51–52. There are no records or documents evidencing his cashing in the IRA account. *Id.* at p. 77. The Debtor received a cashier's check which he cashed and paid bills with the proceeds. *Id.* With respect to the living trust listed on the financial statement, the Debtor admitted it was not his, but was owned by his wife. *Id.* at pp. 52–54.

The life insurance "valued" at $100,000 actually referred to the face value of the insurance rather than any cash surrender value. *Id.* at p. 54. The Debtor did not have any knowledge of the cash surrender value as of June 1, 1990, nor has he provided any documentation regarding the life insurance policy. *Id.*

The home valued at $425,000 on the September 1990 financial statement had actually been sold in June 1990 for $378,000. *Id.* at pp. 54–55. Thus, the property had already sold for about $45,000 less than the stated value on the financial statement. *Id.* at pp. 55–56. In addition, the Debtor provided no documentation regarding the home or the sale thereof. Although the financial statement implies that he held ownership interest in the home, the home was actually owned by a land trust in which his wife was the beneficiary. *Id.* at pp. 60–61.

The Debtor stated he did not know what he was referring to when he listed furniture and appliances with a value of $65,000 on the financial statement. *Id.* at pp. 57–59. Additionally, the Debtor stated at his deposition that he gave away or sold most of the furniture and appliances at a garage sale sometime in June 1990 before he moved to Florida. *Id.* at pp. 58–59. The Debtor could not recall the prices received for the furniture and provided no documentation regarding the furniture or appliances. *Id.* at pp. 58–59.

The 1989 Cadillac automobile reflected on the financial statement as having a value of $21,500 was encumbered by a loan of at least $13,500. *Id.* at pp. 61–64. The Debtor traded this Cadillac for a leased car in November 1990. *Id.* He has no documentation regarding the purchase or the trade in of the 1989 Cadillac. *Id.* In addition, the 1989 Corvette which is reflected on the financial statement as being owned by the Debtor alone and as having a value of $29,350, was actually owned jointly by the Debtor and his wife. *Id.* at p. 64. Moreover, the Corvette was encumbered by a loan of approximately $21,000. *Id.* at pp. 64–65. The Debtor again provided no documentation regarding this asset or the corresponding debt.

The Debtor further stated at his deposition that the clothing valued at $5,000 was sold or thrown out. *Id.* at p. 65. He provided no documentation regarding same. In addition, the Debtor noted that even though he listed the jewelry and tableware as being worth $48,000, those items were actually owned by his wife. *Id.* at pp. 65–66. The Debtor indicated that he owned very little jewelry, and as of November 1991, he did not know whether all of the jewelry that was listed on the financial statement still existed. *Id.* at pp. 65–66, 68. The Debtor provided no documentation with respect to the jewelry. The Debtor further stated that the tableware was silverware his father had left to the Debtor's wife when his father died. *Id.* at p. 66. The

Debtor testified that his father had a will which left all of his personal property to the Debtor, but the Debtor's father told him to give the silverware to the Debtor's wife. *Id.* at pp. 66–67. The Debtor, although he was the executor of his father's estate, does not have a copy of the will.

As for the guns which are valued at $3,500 on the financial statement, the Debtor testified that at the end of 1990, he sold his guns for cash at a gun show. *Id.* at p. 69. The Debtor asserted that in late 1990 he sold the guns for approximately $1,000 in cash. *Id.* at pp. 70–71. He further stated that he paid bills with this money and he does not have receipts or documentation indicating that he received the $1,000 from the guns. *Id.* Furthermore, the Debtor could not recall what he meant by the category listed on the financial statement as "miscellaneous" with a guess value of $4,000. *Id.* at p. 71.

Finally, the financial statement listed other assets which consisted of two parcels of property, 30 acres of farmland and 76 acres of land zoned commercial with respective values of $988,268 and $869,022. The Debtor indicated that these two pieces of property which were actually owned by his wife either had been foreclosed upon or would be foreclosed upon soon. *Id.* at pp. 71–76, 78–79. The Debtor provided no documentation regarding either parcel of property.

On December 16, 1991, the Honorable David H. Coar entered an order granting BancFlorida's motion to terminate or modify the automatic stay, authorizing BancFlorida to repossess and sell the boat. *See* BancFlorida's General Rule 12(M) Statement, Exhibit J. On April 2, 1992, BancFlorida sent a letter to the Debtor's spouse at the Debtor and his spouse's residence (2853 S.W. 47th Terrace, Cape Coral, Florida 33914) indicating that the boat would be sold at a private sale if it was not redeemed by payment of the outstanding balance on or before April 9, 1992. *See* BancFlorida's General Rule 12(M) Statement, Exhibit M. BancFlorida sent this letter prior to the sale of the boat. Thereafter, on June 1, 1992, BancFlorida

sold the boat to a third party for $70,000, less $7,822 for the costs of sale. The sale of the boat reduced the Debtor's obligation to BancFlorida under the loan documents $62,178, leaving a deficiency of $119,793.87. *See* BancFlorida's General Rule 12(M) Statement, Exhibits Q and U.

The Debtor was aware of the existence of the sale notice prior to the sale of the boat. *See* BancFlorida's General Rule 12(M) Statement, ¶ 62.[1] Additionally, at the marina where the boat was being stored, and prior to its sale, the Debtor observed a notice indicating that the boat was for sale. *Id.* at ¶ 63. Previously, in correspondence with representatives of BancFlorida and in deposition testimony, the Debtor indicated the value of the boat ranged from $72,900 to $59,000. In a letter dated June 8, 1991, from the Debtor to Linda Cooper, a BancFlorida representative, the Debtor indicated that the "June, 1990, Buck Book shows the boat to have a market value of $72,900.00." *See* BancFlorida's General Rule 12(M) Statement, Exhibit N. In a September 2, 1991 letter to Fred Ingersol, Linda Cooper and Robert Miranda, representatives of BancFlorida, the Debtor indicated the "current BUC Used Boat Price Guide shows the value of the boat at approximately $59,000.00." *See* BancFlorida's General Rule 12(M) Statement, Exhibit O. Further, in an October 10, 1991 letter to Greg Murphy, vice-president of BancFlorida, the Debtor indicated "I have consulted with the selling dealership as to the actual value of the boat as it now exists, and was informed that I will be lucky to get $60,000 for it." *See* BancFlorida's General Rule 12(M) Statement, Exhibit P, p. 2. Additionally, the Debtor stated at his deposition that people at the marina where the boat was bought told him "that no matter what the BUC Book says, that boat is worth $60,000 as it says there. They looked at it. The boat was at the marina. This boat is worth less no matter what the book says. We hate to bust your bubble, but that's all it's worth." *See* BancFlorida's General Rule 12(M) Statement, Exhibit A, pp. 100–101.

---

1. BancFlorida sent the Debtor requests for admission under Federal Rule of Civil Procedure 36, incorporated by reference in Federal Rule of Bankruptcy Procedure 7036. The Debtor never responded to these requests for admissions.

On June 23, 1992, BancFlorida filed a three count complaint. Counts I and II objected to the discharge of the Debtor under 11 U.S.C. §§ 727(a)(3) and 727(a)(5). Count III of the complaint sought to have the debt to BancFlorida held nondischargeable under 11 U.S.C. § 523(a)(2)(B). On July 31, 1992, the Court ordered the Debtor to answer BancFlorida's complaint by August 14, 1992. On August 17, 1992 the Debtor filed an answer to the complaint. Therein, the Debtor did not raise any affirmative defenses. On February 16, 1993, the Debtor attempted to file an amended answer without leave of this Court.

On December 18, 1992, BancFlorida brought a motion for partial summary judgment as to Counts I and II. That motion was granted by the Court on March 1, 1993. Thereafter, at a trial held on June 7, 1993, for Count III of the complaint, the Court found the debt owed to BancFlorida nondischargeable and entered judgment in favor of BancFlorida and against the Debtor in the sum of $99,534.66. *See* BancFlorida's General Rule 12(M) Statement, Exhibit V.

The Debtor subsequently appealed the Court's ruling as to all three counts of the complaint to the District Court for the Northern District of Illinois. In a Memorandum Opinion and Order dated October 12, 1993, Judge Suzanne B. Conlon affirmed the Court's ruling as to Counts I and II of the complaint. *See* BancFlorida's General Rule 12(M) Statement, Exhibit W. Judge Conlon, however, vacated the Court's judgment with respect to Count III of the complaint and remanded the case to this Court to determine whether the Debtor properly asserted an affirmative defense to BancFlorida's request for judgment, and if so, whether that defense prevented the entry of judgment in favor of BancFlorida.

The focus of the Debtor's defense is that he did not receive written notice from BancFlorida regarding the intended sale of the boat. He thus concludes that the sale was commercially unreasonable. He further relies upon the presumption created under the Uniform Commercial Code and relevant case law under its Article 9 that the fair market value of the boat at the time of repossession is equal to the debt owed to BancFlorida. Accordingly, BancFlorida's deficiency claim is extinguished as a matter of law for failure to give proper notice. Additionally, BancFlorida's claim for damages which it asserts is nondischargeable under section 523(a)(2)(B) is likewise extinguished. The Debtor has submitted his affidavit stating that he never received any notice of the sale. He further states that he was not telephoned by BancFlorida, nor did he receive notice at any location where he resided or worked informing him of the pending sale.

## III. *APPLICABLE STANDARDS*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1114 (7th Cir.1992).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987), *quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Asso.,* 806 F.2d 146, 149 (7th Cir.1986). The burden is on the moving

party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–586, 106 S.Ct. at 1355. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County*, 901 F.2d 561, 564–566 (7th Cir.1990). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991); *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988); *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S.

918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn*, 913 F.2d at 331. Rule 56 "requires the nonmoving party to go beyond the pleadings" and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In order for an issue to be genuinely in dispute, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

Rule 12(M) of the Local General Rules of the United States District Court for the Northern District of Illinois, adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which it contends there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. The Rule 12(M) statement is more than a mere formality as it tells the Court specifically what issues raided in the record are genuinely in dispute. *Deberry v. Sherman Hosp. Assn.*, 769 F.Supp. 1030, 1033 n. 2 (N.D.Ill.1991). The failure of a movant to file such a statement is grounds for denial of the motion. *See* Local General Rule 12(P); *Deberry*, 769 F.Supp. at 1033 n. 2; *Herhold v. Chicago*, 723 F.Supp. 20, 22 n. 1 (N.D.Ill.1989). BancFlorida has filed its requisite Rule 12(M) statement.

Rule 12(N) also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12(N) statement fails to deny the facts set froth in the movant's statement, those facts will be deemed admitted. *See Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992); *Appley v. West*, 929 F.2d 1176, 1180 (7th Cir.1991); *Maksym v. Loesch*, 937 F.2d 1237, 1240–1241 (7th Cir.1991); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990); *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990).

■ The Debtor has not filed the requisite Rule 12(N) statement. The Seventh Circuit has strictly upheld the enforcement of Rule 12(N). *See Weinco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565 (7th Cir.1992). If a summary judgment respondent fails to timely file a Rule 12(N) statement, the uncontroverted statements in the Rule 12(M) statement are deemed admitted. *Id.* Such enforcement of the filing deadlines is ordinarily justified in light of the Court's significant interest in maintaining the integrity of its calendar. *Id.* Consequently, notwithstanding the Debtor's assertions in his response to the motion that genuine issues of material fact exist, the undisputed fact that the Debtor failed to file the requisite Rule 12(N) statement requires the Court to deem admitted all uncontroverted statements in BancFlorida's Rule 12(M) statement. *See Appley,* 929 F.2d at 1179 (because no Rule 12(N) statement was filed, there were not genuine issues of material fact); *Home Ins. Co. v. Service America Corp.,* 662 F.Supp 964, 966 (N.D.Ill.1987) (nonmoving party's failure to submit statement of genuine issues of material facts deems all facts asserted by movant admitted, and court need only address whether movant was entitled to summary judgment as a matter of law).

### IV. *DISCUSSION*

■ The Debtor does not dispute the evidence BancFlorida presented on Count III to prove up the deficiency owed to BancFlorida in the amount of $119,793.87. Rather, the Debtor contends that based on his argued, but unfiled, affirmative defense, BancFlorida is not entitled to the deficiency judgment at all because the Debtor did not receive notice of the sale of the boat. BancFlorida, on the other hand, argues that the Debtor's asserted affirmative defense is not properly before the Court.

■ Federal Rule of Civil Procedure 8(c) provides in part that a party shall "set forth affirmatively ... any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). The purpose behind Rule 8(c) is to give the plaintiff adequate notice prior to trial of the defenses that the defendant intends to assert. *Ft.*

*Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1377 (7th Cir.1990). Failure to plead an affirmative defense results in a waiver of that defense. *See, e.g., Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1115 (7th Cir.1992); *Maul v. Costan,* 928 F.2d 784, 785–786 (7th Cir.1991); *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991); *Oak Mill Enterprises 2000, Inc. v. Knopfler,* 141 B.R. 1000, 1005 (Bankr.N.D.Ill. 1992).

■ In the Debtor's August 17, 1992 answer, he did not plead any affirmative defenses to BancFlorida's complaint. Not until February 16, 1993, in an amended answer, did the Debtor first attempt to plead any affirmative defense. Federal Rule of Bankruptcy Procedure 7015, which incorporates by reference Federal Rule of Civil Procedure 15(a), provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). Rule 15(a) gives judges broad discretion to grant or deny motions to amend. *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 391 (7th Cir.1989). Leave to amend should be given when justice so requires. *Bohen v. East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986). The Seventh Circuit has adopted a liberal policy respecting amendments to the pleadings in order that cases may be decided on the merits. *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir.1977), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the United States Supreme Court set forth the guidelines in determining whether to allow an amendment:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Id.* at 182, 83 S.Ct. at 230; *accord Daugherity v. Traylor Bros., Inc.,* 970 F.2d 348, 351 (7th Cir.1992). Rule 15(a), however, "is not a license for carelessness or gamesmanship. Parties to litigation have an interest in speedy resolution of their disputes without undue expense. Substantive amendments to the [answer] just before trial are not to be countenanced and only serve to defeat these interests." *Feldman v. Allegheny International, Inc.,* 850 F.2d 1217, 1225 (7th Cir. 1988). It is wholly within a court's discretion to deny an amendment to the pleadings for delay and prejudice to the opposing party. *Ft. Howard Paper,* 901 F.2d at 1379; *Bohen,* 799 F.2d at 1185.

 The Debtor did not file an amended answer within twenty days. Thus, he could only amend his answer by leave of court or with consent of BancFlorida. On February 16, 1993, the Debtor attempted to file an amended answer to the complaint without the consent of BancFlorida or without leave of the Court. Filing an amendment to a pleading without leave of court or written consent of the parties is a nullity. *Friedman v. Skokie,* 763 F.2d 236, 238–239 (7th Cir.1985). On March 31, 1994, after this motion for summary judgment was taken under advisement, the Debtor lodged a motion with the Clerk of the Bankruptcy Court in Chicago, Illinois, for leave to amend his answer. The Debtor's motion to amend was not properly accompanied by a notice of presentment specifying the date and time the motion was to be presented as required by Local General Rule 12(B). On April 22, 1994, when the Court was hearing other matters in Joliet, Illinois, the Court discovered two unopened envelopes which had been deposited on the bench. These envelopes contained the Debtor's motion to file the amended answer instanter with a notice for presentment on April 22, 1994. One envelope was addressed to the Court and the other to the Bankruptcy Clerk's Office in Joliet. Neither the Court nor the Clerk's Office staffs the Joliet federal building except on the two or three days each month when the Court holds hearings in Joliet. The motion, therefore, was not placed on the Court's calendar for April 22, 1994, because it was not properly lodged with the Clerk's Office in Chicago. The Clerk does not have an office in Joliet, only in Chicago where all pleadings, papers and motions are to be lodged and filed for the Eastern Division cases. Nobody on behalf of the Debtor appeared to present the motion to amend or inquired as to whether it would be placed on the Court's docket. Accordingly, the Court denies and strikes the motion because the Debtor did not properly lodge the motion with the Clerk's Office and failed to properly present and prosecute the motion in accordance with Local General Rule 12(I).

 It is not an abuse of discretion to deny the Debtor leave to amend his answer where leave was never requested. *See Carl Sandburg Condominium Asso. No. 1 v. First Condominium Dev. Co.,* 758 F.2d 203, 206 n. 1 (7th Cir.1985). Further, the Court previously entered judgment in favor of BancFlorida on June 7, 1993. The presumption in favor of liberality in granting motions to amend under Rule 15(a) is reversed after judgment has been entered. *First Nat. Bank of Louisville v. Continental Illinois Nat. Bank & Trust Co.,* 933 F.2d 466, 468 (7th Cir.1991), *citing* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1489 (2d ed. 1990). The Court finds that allowance of the amended answer at this stage of the proceedings would cause undue prejudice to BancFlorida. The Debtor had ample opportunity prior to the entry of judgment on Count III to seek leave of the Court to amend his answer. His dilatory tactic at this point in the litigation will not be countenanced. Accordingly, the Court denies leave to file an amended answer to include such affirmative defense.

Notwithstanding the above, the Debtor argues that his affirmative defense is properly before the Court because BancFlorida first

objected to the timeliness of his amended answer only on appeal, and therefore consented to the raising of the affirmative defense in the amended answer. The Debtor's contention that BancFlorida did not object to the Debtor's affirmative defense until he appealed this matter is clearly erroneous. The June 7, 1993 transcript of the trial on Count III of the complaint demonstrates that BancFlorida objected to the Debtor raising the unfiled affirmative defenses: "[w]e are going to object to the use of any documents or any argument with respect to the affirmative defenses that are raised in there as they are not properly before the court." (Trial Transcript, p. 5); "I believe that the commercial unreasonableness is an affirmative matter that has not been raised." (Trial Transcript, p. 14); and "[w]e believe that it is an affirmative matter ... that they are estopped from raising because it wasn't raised as an affirmative defense." (Trial Transcript, p. 16). Thus, the Court finds that BancFlorida did not at trial or at any time thereafter implicitly or explicitly consent to the filing of the Debtor's affirmative defense.

Additionally, the final pretrial order entered on March 1, 1993, prepared in conformance with Local General Rule 5.00, is designed to control the course of the trial. *See* Fed.R.Civ.P. 16(e); Local General Rule 5.00. A theory of defense that is not expressed in a party's trial brief submitted with the final pretrial order is waived. *AM Intern., Inc. v. Datacard Corp.,* 1994 WL 127224, at *3 (N.D.Ill. April 12, 1994). The Debtor did not raise the affirmative defense in his pretrial submissions. Hence, for this additional reason, the Court finds that the Debtor waived the defense at trial and did not timely or properly raise it after the remand from the District Court before the instant motion for summary judgment was briefed and came under advisement.

Even if the Debtor's affirmative defense was properly raised, the Court finds that under Florida law the Debtor actually received reasonable notice of BancFlorida's sale of the boat. Even though BancFlorida sent a written notice of the intended sale

addressed only to the Debtor's wife at their then residence address in Cape Coral, Florida, the Debtor received actual notice of the intended sale prior thereto which enabled him an opportunity to exercise his right to redeem the collateral in advance of the sale. He also saw a notice of the intended sale posted at the marina where the boat was stored. Thus, the Debtor's affirmative defense does not prevent the entry of judgment in favor of BancFlorida.

The parties do not dispute that the Florida Commercial Code governs as the appropriate choice of law on the disputed issues regarding the sale of the boat.[2] Application of Florida law is appropriate as the State of Florida was the place where the contract between the parties was made, was to be performed, and where BancFlorida allegedly breached its duty to give the Debtor proper notice of its intended private resale of the boat. *See generally,* John T. Cross, *State Choice of Law Rules in Bankruptcy,* 42 Okla. L.Rev. 531 (1989). The validity of a creditor's claim is determined by rules of state law. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Section 679.504 of the Florida Commercial Code, which corresponds to Uniform Commercial Code Section 9–504, establishes the procedure to be followed by a secured party in disposing of collateral following a default. Specifically, subsection (3) thereof relating to notification provides in relevant part:

> (3) reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

Fla.Stat. ch. 679.504(3) (1991). This section requires a secured party to give "reasonable" notice of a sale of repossessed collateral. Florida, like most states which have adopted versions of the Uniform Commercial Code,

2. Both parties have cited case law from jurisdictions other than Florida. While those case may

be instructive, the Court is not bound to follow them as they are not controlling.

conditions a creditor's right to pursue a deficiency claim against a debtor after sale of the collateral upon reasonable prior notice to afford the debtor an opportunity to redeem the collateral and pay off the debt prior to sale. *Bondurant v. Beard Equipment Co.,* 345 So.2d 806, 809 (Fla.Dist.Ct.App. 1st Dist. 1977). Adequacy of notice for the sale of collateral is a question of law, not of fact. *See, e.g., West Chicago State Bank v. Rogers,* 162 Ill.App.3d 838, 847, 113 Ill.Dec. 954, 961, 515 N.E.2d 1261, 1268 (2d Dist.1987); *First Nat. Bank of Maryland v. Di Domenico,* 302 Md. 290, 296, 487 A.2d 646, 649 (1985).

 Notification under section 679.-504(3) pursuant to Florida's version of the Uniform Commercial Code, need only be reasonable, but not necessarily in writing. *Bagel Break Bakery, Inc. v. Bagelman's, Inc.,* 431 So.2d 676 (Fla.Dist.Ct.App. 4th Dist. 1983); (oral notice sufficient, but other aspects of notice commercially unreasonable); *Bondurant,* 345 So.2d at 808; *In re Forest Enterprises, Inc.,* 64 B.R. 310, 313 (Bankr. M.D.Fla.1986) (the court was not ready to accept a requirement of written notice in all circumstances). "The purpose of notice under Section 679.504(3) is to enable the debtor to protect his interest by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it not be sacrificed by a sale at less than its true value." *Bondurant,* 345 So.2d at 809. In addition, section 679.105(4) provides that "chapter 671 [pertaining to general provisions of the Florida Commercial Code] contains general definitions and principles of construction and interpretation applicable throughout this chapter." Fla.Stat. ch. 679.105(4) (1991).

Also pertinent to this matter is section 671.201(26) which provides:

A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. *A person "receives" a notice or notification when*

(a) *It comes to his attention;* or

(b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

Fla.Stat. ch. 671.201(26) (1991) (emphasis added). Subsection (38) of section 671.201, also of further relevance states:

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances . . . .

Fla.Stat. ch. 671.201(38) (1991). These provisions require only that a creditor give notice of the impending sale of collateral. They do not require an additional showing of actual receipt on the part of the debtor of written notice sent by the creditor. *Grant v. Southtrust Bank of Northwest Florida,* 605 So.2d 171, 172 (Fla.Dist.Ct.App. 1st Dist.1992). "[I]n the case of a private sale, it is sufficient to put the Debtor on notice of the time after which the sale or disposition shall occur." *In re Globe Motor Homes, Inc.,* 51 B.R. 691, 694 (Bankr.M.D.Fla.1985). For purposes of a debtor's exercise of redemption rights, the Court opines that it is more important and significant for a debtor to have actual notice of an intended sale prior thereto, than for the creditor to have mailed formal written notice to the debtor.

 While the failure to give notice generally renders a sale commercially unreasonable, that failure does not necessarily preclude entry of a deficiency judgment following the sale. *Landmark First Nat. Bank of Fort Lauderdale v. Gepetto's Tale O' the Whale, Inc.,* 498 So.2d 920, 922 (Fla.1986); *First Florida Bank, N.A. v. Howard,* 604 So.2d 1286, 1287 (Fla.Dist.Ct.App. 5th Dist. 1992). The Florida Supreme Court adopted the rule set forth in *Norton v. National Bank of Commerce of Pine Bluff,* 240 Ark. 143, 398 S.W.2d 538 (1966) that:

when it has been determined that a secured party has disposed of collateral in a commercially unreasonable manner, there

will arise a presumption that the fair market value of the collateral at the time of repossession was equal to the amount of the total debt that it secured. The burden to prove that the fair market value of the collateral was less than the debt will be upon the secured party. If the secured party meets this burden, he will be allowed to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined.

*Weiner v. American Petrofina Marketing, Inc.,* 482 So.2d 1362, 1365 (Fla.1986). Thus, failure to give the requisite notice raises only a rebuttable presumption that the sale was commercially unreasonable. The creditor may rebut that presumption, however, by demonstrating what the fair market value of the collateral was a the time of the repossession. *Weiner,* 482 So.2d at 1365.

The undisputed facts demonstrate that the Debtor received actual notice in advance of the sale. Hence, he had actual knowledge of the pendency of the sale. The Debtor admitted that in April, 1992, he resided with his spouse, Carol De Pasquale, at 2853 S.W. 47th Terrace, Cape Coral, Florida 33914. The Debtor also does not dispute that in April, 1992, he was aware of correspondence sent to his address, on behalf of BancFlorida, addressed to his wife, indicating that the boat would be sold at a private sale if it was not redeemed by a certain subsequent date. Finally, the Debtor does not dispute that after repossession of the boat, he observed a notice of the sale at the marina on February 19, 1992, at least three and a half months prior to the June 1, 1992 sale.

BancFlorida does not dispute the fact that it did not address the written and mailed notice to the Debtor. Rather, that notice was sent to the Debtor's wife at their place of residence. This unexplained, but nonfatal, omission does not under the foregoing Florida authorities eviscerate BancFlorida's deficiency claim based on the difference between its loan indebtedness and the net sale proceeds recovered from the sale of its collateral. Because the Debtor had actual knowledge of the sale of the boat well in advance of the sale, the Court finds that the notice the

Debtor received was sufficient and reasonable, and the Debtor had adequate opportunity to redeem the collateral. Therefore, the Court finds that there are no material outcome determinative facts in dispute and BancFlorida is entitled to judgment as a matter of law.

The Debtor cites *Gangelhoff v. Transamerica Commercial Finance Corp.,* 611 So.2d 1333 (Fla.Dist.Ct.App. 2d Dist.1993) for the proposition that whether a sale of collateral is made in a commercially reasonable manner is a question of fact not susceptible to summary judgment. The Debtor has mischaracterized the holding of this case. The *Gangelhoff* court found that the debtor's affidavit in that case was sufficient to raise the question of whether the sale was commercially reasonable under section 679.504. *Id.* at 1334. *Gangelhoff* is distinguishable because in the present matter the Court finds the Debtor's affidavit insufficient to raise the question of whether the sale was commercially reasonable. While written notice was not sent to and mailed directly to the Debtor, as indicated in his affidavit, he acknowledges that he did receive advance actual notice of the sale.

■ The argued presumption under the Florida Commercial Code that the collateral is equal in value to the debt when inadequate or no notice is given is controverted by the value the Debtor ascribes to the boat and the Debtor's admissions as to the fair market value of the boat. The failure of a creditor to dispose of collateral in a commercially reasonable manner, by failing to give the debtor reasonable notice of the sale, does not preclude the creditor, as a matter of law, from obtaining a deficiency judgment. If the evidence shows that the fair market value of the collateral is less than the balance due on the contract, the creditor is entitled to a deficiency. *See Vito's Trucking & Excavating Co. v. Marubeni American Corp.,* 573 So.2d 156, 157 (Fla.Dist.Ct.App. 4th Dist.1991); *Weiner,* 482 So.2d at 1365. The failure to comply with the notice provision will not, alone, preclude the creditor from seeking a deficiency judgment. Florida law follows the rebuttable presumption rule: if a creditor can overcome the presumption that the value of the

collateral at the time of repossession was equal to the total amount of the debt, and if no other defenses are asserted and proven, the creditor is entitled to a deficiency judgment. *Ford Motor Credit Co. v. Jones,* 584 So.2d 205, 206 (Fla.Dist.Ct.App. 2d Dist. 1991).

In the case at bar, in three separate letters from the Debtor to a BancFlorida representatives, the Debtor indicated the value of the boat to be between $59,000–$72,900. Additionally, the Debtor stated at his deposition that people at the marina where the boat was bought told him the boat was worth $60,000. The Court finds that the presumption that the fair market value of the boat at the time of the sale is equal to the total debt it secured is overcome by the Debtor's above recited numerous admissions as to the boat's then fair market value.

█ The thrust of the Debtor's arguments is that because of BancFlorida's defective notice of resale, it has lost any deficiency claim under its security agreement and ipso facto its dischargeability under the Bankruptcy Code also is defeated. The Court rejects this conclusion. The Court notes that none of the cited cases address the issue that even if BancFlorida did not provide the Debtor with adequate notice of the sale and thereby lost its deficiency contract claim under the Florida Commercial Code, does this a fortiori mean that BancFlorida has lost its tort based Bankruptcy Code dischargeability claim under section 523(a)(2)(B) for the Debtor's fraudulent misrepresentations with respect to his financial statement. At the time the Debtor borrowed the money lent by BancFlorida for his acquisition of the boat he created two potential separate causes of action: a contract based cause of action under the loan documents when he failed to make the requisite payments, culminating in BancFlorida's deficiency claim under the Florida Commercial Code after its repossession and sale of the collateral; and a tort based cause of action for fraud when the Debtor misrepresented his financial condition which ripened into the section 523(a)(2)(B) claim under the Bankruptcy Code after the Debtor filed his bankruptcy petition. These two causes of action against the Debtor are severable and distinct. Although BancFlorida might have lost its contract deficiency claim for inadequate notice, that does not mean that its tort based claim under section 523(a)(2)(B) was also lost. Any defect in BancFlorida's contract claim for want of notice to the Debtor does not excuse the Debtor's earlier created tort liability for fraud based on his false financial statement on which BancFlorida reasonably relied. There is nothing in the text of section 523(a)(2) that would lead one to conclude that failure to give reasonable notice of the disposition of collateral under the Uniform Commercial Code is a proper affirmative defense to a dischargeability determination under section 523(a)(2)(B). Where Congress saw fit to set up specific affirmative defenses it explicitly did so. *See, e.g.,* 11 U.S.C. § 547(c).

In the District Court's Opinion and Order remanding Count III to this Court, it cited *State Bank of Hallsville v. Hull,* 148 B.R. 917 (Bankr.W.D.Mo.1993) and *In re Parsons,* 124 B.R. 818 (Bankr.S.D.Cal.1991) as holding that under applicable state law lack of notice of the sale of collateral precludes the creditor from recovering a deficiency from the debtor. Both *Hull* and *Parsons* are distinguishable on their facts from the case at bar. *Hull* found under Missouri law that debtor had not received actual notice as required under Missouri precedent, unlike the facts here. The *Hull* court held that as a result of no notice, there was no deficiency claim and thus there could be no nondischargeable debt because there was no debt. The Court respectfully disagrees with the Debtor that there is no debt remaining owed BancFlorida. The omission to mail a copy of the sale notice to the Debtor at his Florida residence is not fatal here especially in light of the Debtor's actual and advance notice of the sale which afforded him a reasonable opportunity to redeem before the private sale took place. Similarly, *Parsons* found that no notice under California law had been given, unlike the facts of this matter. While the notice given in the instant matter was less than perfect, it was given and is better than no notice at all.

## V. *CONCLUSION*

For the foregoing reasons, the Court hereby grants BancFlorida's motion for summary judgment as to Count III of the complaint.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with the Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.